The opinion of the court was delivered by
Tighman, C. J.
This case depends on the will of Abraham Carter, and the question is, what estate passed in 50 acres of land devised by the testator, to his son Edward Carter. The following is the material part of the will. (His honour here read it.) There is no doubt that the testator intended to give an estate for life to his son Edward; because he has said so expressly, and has moreover restrained him from destroying the timber, which he would not have done, if he had intended to give him the inheritance. But if it should appear that the testator had likewise another intent, inconsistent with an estate for life, then in order to effectuate the will, the court must consider which is the main intent and having ascertained that, the intent of minor importance must give way. This is the rule established in the case of Robinson v. Robinson, 1 Burr. 38, and there is so much good sense in it, that it has never been disputed. Had the testator any other intent then, and what was it? He evidently had another inient, viz. that all the male issue of Edward should take, and the estate should not go over, while there was any such issue in existence. That intent can be effected by giving an estate in tail male to Edward, and in no other way. If Edward took for life, and his heirs male by purchase, the estate would go after his death, to his eldest son, in fee, but that would defeat the testators intent, which was, that all the sons should take. There are no words which would justify a construction, that if there were several sons, they should take as tenants in common, in fee. The estate is given, after Edward’s death, to the heirs male of his body lawfully to be begotten, and as there can be but one heir male at one time, the eldest son must take it. Besides there was an intent, that after failure of issue male *432 of the body of Edward, indefinitely, the estate should go to his brothers, the plaintiffs in fee, as tenants in common. But this intent cannot possibly be effected in any other way than by giving Edward an estate in tail male, by virtue of which the whole would go to each of his sons in succession, and after a total failure of issue male, whenever it might happen, the remainderof the whole would vest in possession in the testators other sons Joseph and Daniel. There are no expressions which limit the failure of heirs male of the body of Edward, to the time of his death, orto any other particular time. If there had been, the case would have been very different. It is no ■wonder, thatatestator,sittingdown to make his will and ignorant of those technical difficulties, by which the most experienced professsional men are frequently embarrased, should attempt to create estates which are incompatible. And in nothing would he be more apt to fall into error, than in a wish to restrict the first taker, to an ' estate for life, with an inheritance of some kind, to his children. The history of wills shows this to be the case. And accordingly, the courts have frequently been called upon, to mould these inconsistent designs into a form which might give efficacy to the most important, or governing intent, for that, indeed, is truly to effectuate the will. I will cite a case or two, to show, that the construction I have put upon this will, is supported by the opinions of different courts, in cases very similar. In Dodson v. Grew, 2 Wils. 322, the devise was, “to A. for life remainder to the issue male of his body lawfully to be begotten and the heirs male of the body of such issue male, and for want of such issue male, over.” Held, that A, took an estate in tail male. That case differs from the present, in this, the words of limitation superadded to the devise to the issue male of A. are in tail; whereas in the case before us, they are in fee. But we shall see that in the case next to be cited, that difference was disregarded. In Morris v. Le Gay, decided in the year 1730, and cited by Lord Kenyon, in Down v. Puckey, 5 Durn. and East. 324, the devise was “ to A for life, remainder to the heirs of the body of A, and their heirs, and if A. died without such issue of her body, then over. ” This comes very near to our case, and it was decided, that A. took in tail. To these cases, I will add, the opinion of Mr. Fearne, which from his well established reputation, is entitled to great consideration. “If the words be, heirs, or heirs of the body, &c. in the plural; in that case, even words of limitationengrafted on them, if not inconsistent, with the nature of the descent pointed out by the first vvords, will not convert them into words of purchase, (p. 180, 7th ed.)”-and again, in page 183, he says, “ where the first words give an estate tail general, and the words en-grafted thereon, are words serving to limit the fee, it seems by the general and latter opinion, the annexed words of limitation are not to be attended to, as may be seen by the above cited cases of Wright v. Pearson, Amb. Rep, 35S. Goodright v. Pullyn, 2 *433 Lord Raym. 1437, and King v. Burchett, Amb. 379.” I have * no doubt therefore, that Edward Cjzrter,look an estate tail, which was barred by the common recover. I am opinion, that the judgment should be affirmed, '
Judgment affirmed.